THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

DAVID LOTT,

CASE NO. C14-0260-JCC

10

Plaintiff,

11

v.

12

ZACK ANDERSON, *et al.,*

13

Defendants.

ORDER DENYING PLAINTIFF'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT AND
DENYING DEFENDANTS'
MOTION RE JURY TRIAL

14

15    These matters come before the Court on Plaintiff's Motion for Partial Summary

16  Judgment (Dkt. No. 18) and on Defendants' Motion for a Jury Trial (Dkt. No. 21).  Having

17  thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument

18  unnecessary and hereby DENIES both Motions for the reasons explained herein.

19  **I.      BACKGROUND**

20    On August 11th, 2011, Tukwila police responded to a 911 call regarding a reportedly

21  intoxicated man "cursing and screaming" at a Tukwila bus stop shelter.  (Defendants' Response

22  to Plaintiff's Motion for Partial Summary Judgment, Dkt. No. 26 at 1.)  Officer Zack Anderson

23  was the first to arrive on the scene, and states that when he arrived, Plaintiff David Lott was

24  screaming at people across a busy street.  (*Id.* at 4.)  Officer Anderson exited his patrol car and

25  approached Plaintiff.  (*Id.*)  Officer Anderson reports that he could discern from Plaintiff's

26  "labored speech and the strong odor of intoxicants on his breath" that he had been drinking.  (*Id.*)

ORDER DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANTS' MOTION RE JURY
TRIAL
PAGE - 1

1   Officer Anderson asked Plaintiff for identification, and to calm down and take a seat under the

2   bus stop shelter.  (*Id.*)  Plaintiff allegedly refused to comply, moved away from Officer

3   Anderson, and screamed "I can do whatever the fuck I want."  (Anderson Declaration, Dkt. No.

4   27 at 4.)  At this moment, a second Tukwila police officer, Officer Jake Berry, arrived on the

5   scene.  (Defendants' Response to Plaintiff's Motion for Partial Summary Judgment, Dkt. No. 26

6   at 6.)  Officer Berry's on-car dash camera (dashcam) captured the remainder of this event on

7   video.  (*Id.*)  The footage of the interaction between Plaintiff and officers begins at Plaintiff's

8   backing away from Officer Anderson after being asked for identification.  (DVD, Dkt. No. 2, Ex.

9   A at 0:30.)

10      The parties dispute the manner in which Plaintiff moved backwards.  Defendants allege

11   that the video depicts Plaintiff standing with a boxer's "bladed" foot stance and with his hands in

12   a "potentially threatening" position.  Plaintiff dismisses this and states that Mr. Lott was simply

13   backing up in a neutral manner, with his hands out to the side, away from his body, and his

14   palms facing up.  (*See* DVD, Dkt. No. 2, Ex A at 0:30-0:37.)

15      South 144th Street, a busy thoroughfare, was behind Plaintiff as he backed away from

16   Officer Anderson.  (Defendants' Response, Dkt. No. 26 at 7.)  Officer Anderson states that

17   Plaintiff's intoxication raised concerns about Plaintiff backing into the street.  (*Id.*)  Officer

18   Anderson reports that "[b]ecause of Plaintiff's confrontational and non-compliant behavior, and

19   because of his intoxication . . . simply grabbing Plaintiff and trying to escort him into the bus

20   shelter was [not] a viable option" as this would risk a "dangerous wrestling match adjacent to a

21   busy street."  (*Id.*)

22      The parties also differ in their interpretations of what the footage depicts happening next.

23   Officer Anderson alleges that he decided that pushing Plaintiff towards the bus shelter would

24   limit Plaintiff's ability to grab him, and so he did so.  (*Id.*)  Defendants contend that it was Mr.

25   Lott's level of intoxication, and not the force exerted on him, that caused him to "f[a]ll into" the

26   bus shelter.  (*Id.*)  However, Plaintiff alleges that the dashcam footage contradicts this "push"

ORDER DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANTS' MOTION RE JURY
TRIAL
PAGE - 2

1  and depicts a violent throw directly into the brick and concrete wall of the bus shelter.

2  (Plaintiff's Motion, Dkt. No. 18 at 4.)

3  Officer Anderson then seated Plaintiff on the bench in the shelter, and Officer Berry

4  exited his car to join the two men. (*Id.*)  The officers informed Mr. Lott that he was being

5  arrested for disorderly conduct and obstructing a public servant. (*Id.*)  The officers report that

6  they repeatedly ordered Mr. Lott to get to the ground so that he could be "safely handcuffed."

7  (Defendant's Response, Dkt. No. 26 at 7.)  Plaintiff allegedly refused to get on the ground and

8  yelled "fuck you, I'm not under arrest." (*Id.*)  The footage then shows the two officers lifting

9  Mr. Lott, each grabbing an arm, and forcing him facedown onto the sidewalk, possibly using a

10  leg sweep. (DVD, Dkt. No. 2, Ex. A at 0:45-0:59.)  The officers pulled Mr. Lott's arms behind

11  his back and handcuffed him. (*Id.* at 0:55-1:30.)  Standing Mr. Lott up, the officers walked him

12  over to Officer Anderson's patrol car, while Plaintiff allegedly resisted. (*See id.* at 1:30-2:25; *see*

13  *also* Defendant's Response, Dkt. No. 26 at 8.)  Once at the car, Plaintiff allegedly pulled away

14  from Officer Anderson and tried to turn towards him. (Defendants' Response, Dkt. No. 26 at 8.)

15  In response, the officers forced Plaintiff onto the trunk of Officer Anderson's patrol car, and

16  searched him.  As Officer Anderson did so, Plaintiff allegedly pushed against Officer Anderson,

17  although it is unclear from the video if this is true. (*Id.*)  The officers then allege that Plaintiff

18  aimed a kick at Officer Anderson, but did not make contact. (*Id.*)  However, Plaintiff's feet are

19  partially obscured for much of this portion of the footage, and it is difficult to tell from the video

20  the precise movements of Plaintiff's feet.  There is a point at 3:40 on the video where one of the

21  officers appears to trip over Plaintiff's raised foot.

22  At this point, the officers claim that they tried three times to push Plaintiff into the patrol

23  car, twice pushing on his shoulders, and once pushing on his waist. (Defendants' Response, Dkt.

24  No. 26 at 8.)  Plaintiff allegedly resisted these efforts and the officers could not get him into the

25  car. (*Id.*)  It is difficult to discern from the footage what quantity of force is being exerted on

26  Plaintiff or whether Plaintiff is exerting force back, although the parties are clearly in close

ORDER DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANTS' MOTION RE JURY
TRIAL
PAGE - 3

1  contact with one another.

2  Officer Anderson then reports showing Plaintiff the pepper spray and telling him that he

3  would countdown from five and spray Plaintiff if he did not get into the patrol car.  (*Id*.)  Officer

4  Anderson alleges that Plaintiff responded "fuck you, I ain't doing shit."  (*Id.* at 9.)  Officer

5  Anderson reports counting down from five, and when Plaintiff still did not comply, spraying him

6  in the face with pepper spray for approximately one-and-a-half seconds.  (*Id.*)

7  Plaintiff collapsed and the officers were able to get him into the patrol car.  (*Id.*)  They

8  drove him to the police department three minutes away where they were met by the Fire

9  Department, whom they had called to provide Plaintiff with access to chemical wipes to

10  ameliorate the effects of the pepper spray.  (*Id.*)

11  Plaintiff was taken to Highline Hospital, where he was reportedly placed in four-point

12  restraints, and was treated for a head wound sustained during the arrest, Plaintiff was booked into

13  the King County Jail on charges of disorderly conduct and obstructing a public servant.

14  (Plaintiff's Motion, Dkt. No. 18 at 6.)  The next day, the Tukwila City Attorney filed a criminal

15  complaint against Mr. Lott, which included one count of unlawful transit conduct and one count

16  of obstructing a police officer.  (*Id.*)  Mr. Lott pled not guilty.  (*Id.*)  During the course of his

17  defense, Mr. Lott's attorney obtained a copy of the dashcam footage.  (*Id.*)  He showed it to the

18  prosecutor, who then dismissed all charges on February 15, 2012.  (*Id.*)

19  Two years later, on February 21, 2014, Plaintiff filed suit in this Court, alleging unlawful

20  arrest and excessive use of force in violation of 42 U.S.C. § 1983 on the part of Officers

21  Anderson and Berry, and unconstitutional policy, pattern, or practice of excessive use of pepper

22  spray on the part of the City of Tukwila and its police department.  (Complaint, Dkt. No. 1 at 1.)

23  Plaintiff seeks declaratory and injunctive relief, damages, and attorneys' fees.  (*Id.* at 10.)

24  In his instant Motion, Plaintiff asks the Court to grant partial summary judgment

25  declaring (1) that Officer Zack Anderson used excessive force when he pushed/"threw" Mr. Lott

26  against a concrete bus shelter; (2) that Officer Anderson and Officer Jacob Berry used excessive

1    force when Officer Anderson  pepper sprayed Plaintiff; (3) that the official policies or practices

2    of the City of Tukwila and its police department wrongfully characterize pepper spray as a "level

3    1" use of force and thus authorize its use in circumstances that violate the Fourth Amendment;

4    and (4) that Tukwila's official policy caused Mr. Lott's injuries.

5        The Court addresses each of these summary judgment issues in turn in Section II.  In

6    Section III, the Court will address Defendants' pending Motion for a Jury Trial.  (Dkt. No. 21.)

7    **II.    PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

8        **A.      Summary Judgment Standard**

9        "Summary judgment is appropriate only if, taking the evidence and all reasonable

10   inferences drawn therefrom in the light most favorable to the non-moving party, there are no

11   genuine issues of material fact and the moving party is entitled to judgment as a matter of law.

12   If, as to any given material fact, evidence produced by the moving party . . . conflicts with

13   evidence produced by the nonmoving party . . . , [the court] must assume the truth of the

14   evidence set forth by the nonmoving party with respect to that material fact." *Furnace v.*

15   *Sullivan,* 705 F.3d 1021, 1026 (9th Cir. 2013).  In resolving summary judgment motions, courts

16   are not at liberty to weigh the evidence, make credibility determinations, or draw inferences from

17   the facts that are adverse to the non-moving party.  As the Supreme Court has held, "[c]redibility

18   determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

19   facts are jury functions, not those of a judge, whe[n] he is ruling on a motion for summary

20   judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

21       However, as the Supreme Court has also held, "[w]hen opposing parties tell two different

22   stories, one of which is blatantly contradicted by the record, so that no reasonable jury could

23   believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion

24   for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

25       **B.      Excessive Use of Force Standard**

26       Plaintiff's first and second requests for summary judgment ask the Court to find that

1   Defendants used excessive force on Plaintiff (1) when Officer Anderson threw/ "pushed"

2   Plaintiff into/ "towards" the bus shelter and (2) when Officer Anderson pepper sprayed Plaintiff

3   in order to get him into the police car.  The Fourth Amendment limits police to such force as is

4   objectively reasonable under the circumstances.  *Graham v. Connor,* 490 U.S. 386, 397 (1989).

5   Courts make determinations of objective reasonableness under *Graham* by balancing the severity

6   of the intrusion on the individual's Fourth Amendment rights against the Government's interest

7   in the use of force in that particular instance.  *Espinosa v. City & County of San Francisco,* 598

8   F.3d 528, 537 (9th Cir. 2010).  The Government's interest is evaluated by reference to the

9   *Graham* factors, namely, (1) the severity of the crime; (2) whether the suspect posed an

10  immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting

11  arrest or attempting to escape.  *Id.*  In the Ninth Circuit, courts will also examine the

12  Government's interest in reference to the "totality of the circumstances."  *Mattos v. Agarano*,

13  661 F.3d 433, 441 (9th Cir. 2011).  The "totality of the circumstances" calls for the consideration

14  of additional issues such as the type and amount of force used, the availability of alternative

15  methods to take Plaintiff into custody or subdue him, the amount of time and any changing

16  circumstances during which the officer had to determine the type and amount of force that

17  appeared to be necessary, and other circumstances to which the officer was responding.  *See*

18  Ninth Circuit Model Civil Jury Instruction 9.22.

19          **C.      Defendant's Throw/ "Push"**

20          Plaintiff argues that Officer Anderson's alleged act of throwing Mr. Lott against the bus

21  structure was not justified by any of the *Graham* factors and constituted excessive force.

22  Plaintiff correctly states that "failure to fully or immediately comply with an officer's orders

23  neither rises to the level of active resistance nor justifies the application of a non-trivial amount

24  of force."  *Nelson v. City of Davis,* 685 F.3d 867, 881 (9th Cir. 2012) (citing cases demonstrating

25  that this principle was clearly established before Mr. Lott's arrest); *see also Young v. Cnty. of*

26  *Los Angeles,* 655 F.3d 1156, 1165-66 (9th Cir. 2011) (holding that it was clearly established by

1   2007 that significant force is not justified when "a suspect's disobedience of a police officer

2   takes the form of passive noncompliance that creates minimal disturbance and indicates no

3   threat").  Despite this proper articulation of the law, Plaintiff has not met his summary judgment

4   burden of showing that there are no material facts in dispute and that he is entitled to judgment as

5   a matter of law.

6         As a threshold issue, there remains a hotly disputed issue of material fact about what

7   Officer Anderson *did.*  Defendants continue to allege that Officer Anderson merely *pushed*

8   Plaintiff towards the bus shelter to prevent him from either backing into traffic or from wrestling

9   Officer Anderson into it, and it was Mr. Lott's intoxication that caused him to fall into the

10  structure.  Meanwhile, Plaintiff alleges that Officer Anderson intentionally and roughly threw

11  Mr. Lott against the brick and concrete structure, provoked not by genuine fears of safety but by

12  ire at Plaintiff's lack of cooperation and obscene speech.  The Court will note that the video

13  footage frankly favors Plaintiff's version of the events.  However, given the strict prohibitions

14  against weighing the evidence and making inferences against the nonmoving party at the

15  summary judgment stage, this Court cannot conclude that *no* reasonable jury could find that it

16  was due mainly to Plaintiff's intoxication that he made contact with the bus structure.

17        Further, on a more analytical level, Plaintiff has not established that Officer Anderson's

18  action constituted excessive use of force as a matter of law.

19        First, Plaintiff cites no cases showing the level of force constituted by either a push or a

20  throw.  The only attempt Plaintiff makes to classify this level of force is to call it "not

21  insignificant," (Plaintiff's Motion, Dkt. No. 18 at 8), but not in reference to any precedent.

22  Meanwhile, Defendants offer evidence from a police expert that "grabbing and shoving a suspect

23  is one of the 'lowest levels of force an officer can use.'"  (Ovens Declaration, Dkt. No. 28 at 8.)

24        Second, there remain several issues of material fact with regard to the *reasonableness* of

25  this push or throw under both the three *Graham* factors and under the more expansive totality of

26  the circumstances test.  This is mainly due to the fact that the only video footage we have of the

1   event is from Officer Berry's dashcam video, and Officer Berry did not arrive on the scene until

2   the instant before Officer Anderson threw Plaintiff against the bus structure.  Even if

3   Defendant's act was a rough throw (which, the Court will again note, seems supported by the

4   footage), throws are not prima facie excessive under the Fourth Amendment.  The

5   reasonableness of the throw would hinge on Plaintiff's behavior leading up to the throw,

6   behavior that was regrettably not captured on video.

7        Under *Graham,* the Court agrees with Plaintiff that there should be no genuine dispute

8   that Plaintiff's then-suspected crime, arising from his yelling and cursing at a bus stop, was not

9   severe in terms of the first factor.  However, as the Court must view the evidence and make

10  inferences in the light most favorable to the nonmoving party at this stage, there would appear to

11  be at least a material issue as to whether Mr. Lott posed an immediate threat to the officers' or

12  the public's safety under the second factor.  There is some support for this in the officers'

13  averments of Mr. Lott's confrontational, aggressive speech and refusal to comply with officer

14  instructions, the reported evidence of his intoxication, and Mr. Lott's size compared to the

15  officers.  Without video footage capturing Mr. Lott's pre-throw behavior, the Court has no

16  objective, undisputed evidence against which to test Defendants' averments regarding Plaintiff's

17  behavior.  Without this objective evidence, at summary judgment stage, procedural precedent

18  compels the Court to credit the allegations of the nonmoving Defendants.  Finally, there is some

19  evidence of reasonableness under the third *Graham* factor, in terms of resisting arrest, given that

20  Plaintiff does seem to be backing away from Officer Anderson, in alleged noncompliance with

21  the request to sit down and show identification.

22       Under the *totality of the circumstances* test, Officer Anderson does offer evidence of the

23  lack of other options for obtaining Plaintiff's compliance, given the busy street behind him, his

24  alleged intoxication, his alleged confrontational and aggressive language, and his alleged

25  repeated failure to cooperate.

26       Thus, given the rules to which we must adhere at the summary judgment stage, the Court

ORDER DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANTS' MOTION RE JURY
TRIAL
PAGE - 8

1 cannot say that Officer Anderson's throw was unreasonable as a matter of law, especially given

2 the regrettable lack of objective video evidence capturing Plaintiff's behavior before he was

3 thrown.  Accordingly, Plaintiff's Motion for Summary Judgment as to this issue is DENIED.

4        **D.      Defendants' Use of Pepper Spray**

5        Similarly, with regard to Defendants' use of pepper spray, Plaintiff is not incorrect in his

6 statement of Ninth Circuit law, but does not meet his burden of showing that there are no

7 disputes of material fact regarding the officers' alleged violations of this law, nor that Plaintiff is

8 entitled to judgment as a matter of law.

9        In the Ninth Circuit, now and at the time of the events at issue, "pepper spray [is] . . . an

10 *unreasonable* application of force against individuals who [are] suspected of only minor criminal

11 activity, offer[] only passive resistance, and pose[] little to no threat of harm to others." *Nelson,*

12 685 F.3d at 881 (citing cases demonstrating that this principle was clearly established before Mr.

13 Lott's arrest, such as *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000)).

14        Here there is less room for dispute as to the reality of Defendants' actions.  From the

15 video footage, one can observe Officer Anderson pepper spraying Plaintiff in the face while

16 Officer Berry watches.  However, crediting the evidence alleged by Defendants and making

17 inferences about the ambiguities contained in the footage in the light most favorable to

18 Defendants, there remain material questions as to whether Officer Anderson offered Plaintiff a

19 warning and gave him reasonable time to comply before pepper spraying him.

20        Further, as with the push/throw issue, Plaintiff has not yet met his burden of showing that

21 the pepper spray was excessive and unreasonable as a matter of law.  This is chiefly because the

22 parties dispute the circumstances that prompted the pepper spray's deployment.  Most

23 importantly, Defendant officers state that Mr. Lott tried to kick "at" Officer Anderson while he

24 was searching him.  (Defendants' Response, Dkt. No. 26 at 8.)  Defendants state that this

25 attempted kick is captured in the video.  However, the Court does not see any clear kick in the

26 video footage, especially as Officer Anderson is directly *behind* Plaintiff during the time period

ORDER DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANTS' MOTION RE JURY
TRIAL
PAGE - 9

1  encompassing the alleged kick.  But, the Court will note that Plaintiff's feet are obstructed in part

2  of the relevant footage.  Thus, again without objective, irrefutable evidence to the contrary, the

3  Court is once more in the position of being compelled to credit the allegations of the nonmoving

4  party.  And if the Court must take Defendants' not-irrefutably-invalid allegations as true, then for

5  the purpose of summary judgment we are forced to operate under the assumption that Plaintiff

6  did aim a kick at Defendants.  Applying the law to this allegation, assaulting an officer could

7  take Plaintiff's behavior outside the "passive resistance" category, opening the door to Officer

8  Anderson's use of intermediate force.[1]

9       But aside from the possible kick, other behaviors alleged by Defendants could suffice in

10  the minds of a reasonable jury to elevate Plaintiff's behavior above that of "passive resistance,"

11  thus opening the door to the potential reasonableness of intermediate use of force.[2]  For instance,

12  the officers allege that:

13  
> Once at the car, Plaintiff attempted to pull away from Officer Anderson's grasp and turn[] towards
> him.  This can be seen at 2:41-2:45 of the dash cam video.  In response, the officers forced
14  > Plaintiff onto the trunk of Officer Anderson's patrol car.  As Officer Anderson then tried to
> continue searching Plaintiff, Plaintiff was actively trying to push up against Officer Anderson and
15  > also kicked at Officer Anderson.  This can be seen at 3:30-3:39 of the dash cam video. . . Once
> Plaintiff was searched, the police began trying to get him into the patrol car.  Officer Anderson
16  > attempted three times to push Plaintiff into the patrol car.  Those efforts can be seen at 3:47, 3:51,
> and 3:56 on the dashcam video.  Officer Anderson tried pushing Plaintiff into the car twice by
17  > pushing on his shoulder and once on his waist.  Plaintiff resisted each of these efforts to get him
> into the car.  Officer Anderson then warned Plaintiff that he would be OC sprayed if he did not get
18  > into the patrol car.  Officer Anderson then showed Plaintiff the OC spray and told him he would
> countdown from five and spray Plaintiff if he did not comply with commands to get into the car.
19  > Plaintiff responded by saying something to the effect of "fuck you, I ain't doing shit."  Officer
> Anderson then counted down, and, when Plaintiff did not comply with commands to get into the
20  > car, Officer Anderson sprayed Plaintiff with a burst of OC spray for approximately one-and-half
> [sic] seconds.  The police were then able to get Plaintiff into the patrol car.

21  
22  (Defendants' Response, Dkt. No. 26 at 8-9.)  Further, Defendants' police expert has stated that "a

23  _____

24  [1] "Both pepper spray and baton blows are forms of force capable of inflicting significant pain and causing serious
injury.  As such, both are regarded as 'intermediate force' that, while less severe than deadly force, nonetheless
25  present a significant intrusion upon an individual's liberty interests."  *Young,* 655 F.3d at 1161-62.
[2] The Ninth Circuit has "determined that the right to be free from the application of *non-trivial force* for engaging *in*
26  *passive resistance* was clearly established prior to 2008."  *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1094 (9th
Cir. 2013), *cert. denied*, 134 S. Ct. 1292 (2014) (emphasis added).

ORDER DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANTS' MOTION RE JURY
TRIAL
PAGE - 10

reasonable police officer would characterize Plaintiff's actions here as 'active resistance.'"

(Defendants' Response, Dkt. No. 26 at 17 (citing Ovens Declaration, Dkt. No. 28.))  In sum, the

officers allege that that they had no less intrusive means at their disposal to get Plaintiff into the

patrol car and that they offered Plaintiff ample warning before spraying him.  (*Id.* at 18.)

From the video footage, it is difficult to discern the level of force that Defendants are

exerting on Plaintiff or Plaintiff is exerting back on Defendants while the three are poised above

the backseat door opening.  In the video, Officer Anderson's push against Plaintiff's waist is

readily apparent, but the other attempts to get Plaintiff into the car, and any efforts by Plaintiff to

resist, are not clearly conveyed by the footage.  Further, the dashcam video regrettably does not

include sound, so it is impossible to make any objective determinations regarding Plaintiff's

statements to police when they were trying to get him into the car, nor regarding Officer

Anderson's alleged warning about the impending pepper spray deployment.  Thus, without

irrefutable evidence to the contrary, the Court is again compelled to take Defendants' allegations

as true and to draw inferences in their favor.  In this position, the Court cannot find that

Plaintiff's level of resistance is passive as a matter of law, thereby making Officer Anderson's

use of pepper spray unreasonable and excessive under the Ninth Circuit standard.  Plaintiff's

Motion for Partial Summary Judgment on this issue is DENIED.

### E.    Municipal Liability

In their Motion for Summary Judgment, Plaintiff also asks the Court to declare that the

City of Tukwila's official policies on the use of force authorize pepper spray in circumstances

where it violates the Fourth Amendment, and that this policy caused the injuries claimed here.

However, this Court's denials of summary judgment on both of Plaintiff's Fourth Amendment

claims, *see* Sections II(C) & (D), *supra,* means that there have been no constitutional violations

ORDER DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANTS' MOTION RE JURY
TRIAL
PAGE - 11

established as a matter of law at this point.  Until a constitutional violation has been found,

Plaintiff lacks standing to seek declaratory relief regarding the City of Tukwila's pepper spray

classification.  *See Monell v. New York Department of Social Services,* 436 U.S. 658, 691 (1978)

(to consider municipal liability under 42 U.S.C. § 1983, plaintiff must first prove that a

constitutional violation occurred).  A judgment that the City's policies caused Plaintiff's injuries

is likewise premature given that this Court cannot yet say that Plaintiff has indeed been injured.

Accordingly, Plaintiff's third and fourth summary judgment requests, for declaratory relief

finding the City's policies unconstitutional and finding these policies to have caused Plaintiff's

injuries, are DENIED.

In sum, Plaintiff's Motion for Summary Judgment is DENIED in full.

## III.   DEFENDANTS' MOTION FOR A JURY TRIAL

Also before the Court is Defendants' Motion for a Jury Trial (Dkt. No. 21).  Defendants

failed to make a timely jury demand as is required by Federal Rule of Civil Procedure 38(b).

Defendants also failed to comply with the Local Rule 38(b) procedures for making a jury

demand.  Federal Rule of Civil Procedure 39(b) states that "[i]ssues on which a jury trial is not

properly demanded are to be tried by the court."  Although, under Rule 39(b), the Court has

some discretion to grant a motion for a jury trial filed after a failure to make a timely demand,

controlling Ninth Circuit precedent states that this discretion is "narrow" and "does not permit a

court to grant relief when the failure to make a timely demand results from an oversight or

inadvertence."  *Pacific Fisheries Corp. v. HIH Casualty & General Ins., Ltd.,* 239 F.3d 1000,

1002 (9th Cir. 2001).

Even after failing to make a timely jury demand by May 9th, 2014 (the Rule 38(b)

fourteen-day mark after the last pleading was served by Defendants), Defendants neither

ORDER DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANTS' MOTION RE JURY
TRIAL
PAGE - 12

1    requested nor even mentioned a jury trial at the parties' August 12, 2014 status conference.

2    (Defendants' Motion for a Jury Trial, Dkt. No. 21 at 2.)

3           Defendants' explanation for their failure to make a timely jury demand seems to be that

4    the February 25th, 2014 Minute Order setting the Status Conference (Dkt. No. 5) and the

5    subsequent Minute Orders rescheduling the Status Conference all state that "whether the case is

6    jury or non-jury" will be discussed at the Status Conference.  (*Id.*)  The Status Conference was

7
     most finally reset by the Court for August 12, 2014 (Dkt. No. 14), by which time the Defendants'
8
9    deadline to demand a jury (again, May 9th, 2014 under Rule 38(b)), had passed.

10          However, the Court finds nothing in the Minute Orders setting and resetting the Status

11   Conference that would suggest that the parties have been relieved of their obligations to comport

12   with Federal Rule of Civil Procedure 38 and Local Rule 38.  That a jury demand will be

13   discussed at the Status Conference does not reasonably imply that such a demand need not be
14
15   made in the first place.  This failure to make a timely jury demand is an oversight, and as the

16   Court is bound by Ninth Circuit precedent on the issue of discretionary grants, we must DENY

17   Defendants' Motion.

18   **IV.    CONCLUSION**

19          For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment (Dkt. No.

20   18) and Defendants' Motion for a Jury Trial (Dkt. No. 21) are both DENIED.

21          DATED this 18th day of November 2014.

22

23

24   _____

25   John C. Coughenour
     UNITED STATES DISTRICT JUDGE
26

ORDER DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
DENYING DEFENDANTS' MOTION RE JURY
TRIAL
PAGE - 13